UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

| | |
|---|---|
| SACOYA TOLBERT and KRISTA MCCREA, | Case No. 14 CV 56 (CBA) (RER) |
| Plaintiffs, | |
| -against- | **AMENDED COMPLAINT**<br><br>JURY DEMAND |
| THE CITY OF NEW YORK, P.O. JASON REYNOLDS [SHIELD # 1513], P.O. CHRIS MADISON [TAX REG. # 935224] and LIEUTENANT DENNIS FURBER, | |
| Defendants. | |

-------------------------------------------------------------X

Plaintiffs, SACOYA TOLBERT and KRISTA MCCREA, by their attorney, The Law Offices of UGO UZOH, P.C., complaining of the defendants herein, The City of New York, P.O. Jason Reynolds [Shield # 1513], P.O. Chris Madison [Tax Reg. # 935224] and Lieutenant Dennis Furber (collectively, "defendants"), respectfully allege as follows:

<u>NATURE OF THE ACTION</u>

1.      This is an action at law to redress the deprivation of rights secured to the plaintiffs under color of statute, ordinance, regulation, custom, and/or to redress the deprivation of rights, privileges, and immunities secured to the plaintiffs by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. §1983 [and § 1985], [and arising under the law and statutes of the City and State of New York].

<u>JURISDICTION</u>

2.      The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343, 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

3.      As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §1391 (b) and (c).

## THE PARTIES

4.      Plaintiffs, who are both female and were formerly engaged to be married, are and were at all times material herein residents of the United States.

5.      At all relevant times, defendants P.O. Jason Reynolds [Shield # 1513], P.O. Chris Madison [Tax Reg. # 935224] and Lieutenant Dennis Furber (hereinafter "defendant officers") were, upon information and belief, and still are, agents and/or officers employed by defendant City of New York.

6.      At all times herein, the defendant officers were acting under the color of their official capacity, and their acts were/are performed under color of the statutes and ordinances of the City of New York and/or the State of New York. Defendant officers were/are the servants, agents, and employees of their co-defendant, the City of New York, such that their acts are imputed to the City of New York.

7.      At all relevant times, the defendant City of New York was and is a municipal corporation duly organized and existing under the laws of the State of New York, and was/is the employer of the defendant officers, and the actions of the defendant officers complained of herein were done as part of the custom, practice, usage, regulation and/or at the direction of the defendant City of New York.

8.      Plaintiffs are suing the defendant officers in their individual and official capacities.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

9.      On or about June 21, 2011, at approximately 9:30 p.m., defendant officers, acting in concert, arrested plaintiffs without cause at or close to the corner of Ocean Avenue and Church Avenue, Brooklyn, New York, and charged each plaintiff with PL 155.30(8) 'Grand larceny in the fourth degree', among other charges.

10.     Plaintiffs, however, did not steal any property and did not commit any offense against the laws of New York City and/or State for which any arrest may be lawfully made.

11.      Prior to the arrest, plaintiffs were traveling in a vehicle operated by one of their friends named Brandon Bunch.

12.      Mr. Bunch had offered the plaintiffs a ride in his vehicle.

13.      Plaintiffs were seated in the back seat of the vehicle while another friend of Mr. Bunch named Kenny Whiteley sat in the front passenger seat.

14.      Plaintiffs at the time were engaged to be married.

15.      Plaintiffs had travelled to Bridgeport, Connecticut, to obtain a marriage license as same-sex marriage was illegal in the State of New York at the time.

16.      On their way home, however, Mr. Bunch was pulled over by defendant officers just within a few feet from the plaintiffs' home.

17.      At the time when Mr. Bunch was pulled over, Ms. Tolbert was engaged in a personal conversation on her cell phone.

18.      Ms. Tolbert was not even aware that Mr. Bunch was pulled over by defendant officers.

19.      Immediately after pulling over Mr. Bunch, defendant officers rushed over to Ms. Tolbert while she was still engaged in her telephone conversation and forcibly pulled Ms. Tolbert out of the vehicle.

20.      As defendant officers were pulling Ms. Tolbert out of the vehicle, they ceaselessly yelled at Ms. Tolbert apparently for engaging in a telephone conversation on her own cell phone.

21.      Upon pulling Ms. Tolbert out of the vehicle, defendant officers slammed her down on top of the hood of the vehicle.

22.      Defendant officers then tightly handcuffed Ms. Tolbert with her hands placed behind her back, forcibly grabbing and twisting Ms. Tolbert's arms in the process.

23.      Defendant officers proceeded to further slam Ms. Tolbert down on the ground, and were pushing, shoving, kicking, hitting, beating and punching Ms. Tolbert all over her body.

24.      Even though Ms. Tolbert did not offer any resistance, defendant officers continued to ceaselessly assault her.

25.     As the plaintiffs and the other witnesses, including Bunch, Whiteley and other individuals who had gathered at the scene, continued to plead with defendant officers to leave Ms. Tolbert alone as they were all terrified at the level of abuse against Ms. Tolbert, defendant officers seem to intensify the assault.

26.     Defendant officers ignored all entreaties to end the beating and assault.

27.     Ms. Tolbert was caused to sustain serious injuries on various parts of her body as a result of the assault.

28.     Defendant officers also forcibly grabbed Ms. McCrea and tightly handcuffed Ms. McCrea with her hands placed behind her back.

29.     Eventually, defendant officers forcibly pushed the plaintiffs into their police vehicle and transported the plaintiffs to the NYPD-70th Precinct.

30.     When the plaintiffs informed defendant officers that the tight handcuffs were causing them to experience pain and requested defendant officers to loosen the handcuffs, defendant officers ignored the plaintiffs' request and refused to loosen the handcuffs.

31.     While at the precinct, defendant officers separated the plaintiffs and interrogated each plaintiff separately.

32.     In addition to other questions, defendant officers questioned Ms. McCrea concerning the plaintiffs' destination.

33.     Ms. McCrea duly informed defendant officers that she was engaged to be married to Ms. Tolbert and that they were returning from Connecticut with their marriage license.

34.     Ms. McCrea further informed defendant officers that they were a few feet away from her home when their vehicle was pulled over by defendant officers.

35.     Defendant officers then falsely accused Ms. McCrea of lying.

36.     Defendant officers appeared to indicate that Ms. McCrea was a prostitute.

37.     Defendant officers falsely alleged that they were informed by Ms. Tolbert that she cares only about "cash, clothes and hoes."

38.     Defendant officers further falsely alleged that they were informed by Ms. Tolbert that she picked up Ms. McCrea from the street and that she does not care about Ms. McCrea.

39.     Defendant officers attempted to pressure Ms. McCrea to turn against Ms. Tolbert and provide them with information they would use to charge Ms. Tolbert with a crime.

40.     Because Ms. McCrea was candid with defendant officers and did not have any information defendant officers could use to charge Ms. Tolbert with any crime, Ms. McCrea maintained that they did not commit any crime and that they were simply returning from Connecticut with their marriage license.

41.     Ultimately, defendant officers advised Ms. McCrea to break up with Ms. Tolbert and find "a good looking man who cares about [her] to marry."

42.     After detaining the plaintiffs for a lengthy period of time at the NYPD-70th Precinct, plaintiffs were transported to the Central Booking to await arraignment.

43.     While plaintiffs were awaiting arraignment, defendant officers met with prosecutors employed by the Kings County District Attorney's Office.

44.     During this meeting, defendant officers falsely stated to the prosecutors, among other things, that the plaintiffs stole certain properties.

45.     Based on the false testimony of the defendant officers, the prosecutors initiated criminal actions against the plaintiffs.

46.     The prosecutors subsequently conducted an independent investigation and concluded that there was no evidence of any crime committed by either plaintiff.

47.     As a result, the prosecutors declined to prosecute the plaintiffs.

48.     Eventually, after detaining the plaintiffs for a lengthy period of time, defendant officers summarily released the plaintiffs from their unlawful detention.

49.     Plaintiffs had requested defendant officers to provide Ms. Tolbert with medical care or treatment, or transport her to the hospital for medical care and attention.

5

50.     Defendant officers informed the plaintiffs at the time that the plaintiffs' arrest processing and arraignment would be delayed by any arrangement to provide Ms. Tolbert with medical care and treatment.

51.     Defendant officers refused to provide Ms. Tolbert with any medical care or treatment and denied the plaintiffs access to medication, food and drink, as well as contact and visitation by friends and family.

52.     Following their release from their unlawful incarceration, Ms. McCrea broke up with Ms. Tolbert and called off their engagement.

53.     Because of the actions of defendant officers, plaintiffs separated from one another and their strong relationship fell apart.

54.     That each and every officer who responded to and/or was present at the location of the arrest and assault described herein knew and was fully aware that plaintiffs did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

55.     Nonetheless, defendant officers did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to intervene.

56.     As a result of the aforesaid actions by defendant officers, plaintiffs suffered and continue to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, loss of rights to familial association, wages and financial losses, pain and damage, and damage to reputation.

FIRST CAUSE OF ACTION: 42 U.S.C. § 1983

57.     By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 56 of this complaint as though fully set forth herein.

58.     The conduct of defendant officers, as described herein, amounted to false arrest, excessive use of force, first amendment retaliation, failure to intervene, deliberate indifference, cruel and inhuman treatment, cruel and unusual punishment, unlawful stop and frisk, unreasonable detention, unreasonable search and seizure, racial profiling, abuse of authority, pattern of harassment, conspiracy, discrimination, denial of right to intimate association, denial of right to expressive association, selective enforcement,

denial of right to familial association, fabrication of evidence, denial of equal protection of the laws and denial of due process rights.

59.    Defendants denied Ms. Tolbert treatment needed to remedy her serious medical conditions and did so because of their deliberate indifference to Ms. Tolbert's need for medical treatment and care.

60.    Such conduct described herein violated plaintiffs' rights under 42 U.S.C. § 1983 and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

61.    Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SECOND CAUSE OF ACTION: FAILURE TO TRAIN/SUPERVISE/DISCIPLINE AND MUNICIPAL POLICY - against defendant City of New York

62.    By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 61 of this complaint as though fully set forth herein.

63.    Defendant City of New York, acting through the New York Police Department, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when probable cause exists for such arrest.

64.    Additionally, defendant City of New York, acting through Kenneth P. Thompson and the Office of the District Attorney of the County of Kings, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise, and discipline its Assistant District Attorneys and employees concerning correct practices in conducting investigations, interviewing witnesses and informants, assessing the

credibility of witnesses and informants, the initiation and/or prosecution of criminal actions, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and the duty and/or obligation of candor toward the court.

65.     Defendant City of New York, acting through aforesaid NYPD and District Attorney, had actual and/or de facto policies, practices, customs and/or usages of wrongfully arresting, illegally stopping, frisking, searching, seizing, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are members of racial/ethnic minority groups such as plaintiffs, who are blacks, on the pretext that they were involved in some crime or offense.

66.     Further, the existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct.

67.     For example, in *Floyd v. City of New York*, 813 F. Supp. 2d 417, 422 (S.D.N.Y. 2011), the Southern District of New York observed that the City of New York had been accused of racial profiling on multiple occasions and that it had settled at least one of the lawsuits brought against it concerning racial profiling.

68.     In *Ligon v. City of New York*, 12 Civ. 2274, 2013 U.S. Dist. LEXIS 22383, at *9-*10 (S.D.N.Y. Feb. 14, 2013), the Court determined that the City of New York, acting through the NYPD, engages in unlawful stop and frisk. *See also Davis v. City of New York*, 10 Civ. 0699, 2013 U.S. Dist. LEXIS 45601 (S.D.N.Y. March 28, 2013) (same).

69.     Additionally, NYPD Police Officer Michael Carsey was recently convicted of felonies for lying under oath and falsifying information while applying for a search warrant.

70.     Police Officer Carsey's supervisor, Sergeant William Eiseman, had earlier admitted to fabricating facts to justify searching vehicles and homes for cocaine, marijuana and guns, filing false information to obtain search warrants and performing illegal searches of vehicles and homes. That

Sergeant Eiseman admitted to perjury and fabricating evidence against innocent persons that he falsely arrested and charged with possession of narcotics and/or illegal drugs, and also admitted to training numerous young police officers to commit similar crimes and/or offenses.

71.     In addition, in or about October 2011, Detective Stephen Anderson testified against Detective Jason Arbeeny, a veteran of the NYPD. Detective Anderson testified that, among other things, it is a common practice within the NYPD to plant narcotics and/or illegal drugs -- commonly known within the NYPD as "flaking" -- on innocent persons in order to meet arrest quotas. Detective Anderson referred to the practice of planting narcotics and/or illegal drugs on innocent persons as "attaching bodies" to the narcotics and/or illegal drugs. According to Detective Anderson, this practice "was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators."

72.     Regarding the issue of arrest quotas, Detective Anderson confirmed that the NYPD requires officers to fill quotas, and testified that even as a detective "you still have a number [of arrests] to reach while you are in the narcotics division."

73.     Recently, a jury determined that officers of the NYPD are permitted, as a policy and/or practice, to fill their arrest quotas by making unlawful arrests. *See Bryant v. City of New York*, Index No. 22011/07 (Sup. Ct. County of Kings Feb. 18, 2011).

74.     Prior to his testimony, Detective Anderson and his partner provided false testimony in court claiming that they purchased cocaine from certain individuals who as surveillance video later confirmed did not have any sort of contact or communication with Detective Anderson and his partner during the time period that Detective Anderson and his partner claimed to have purchased the controlled substances and/or illegal drugs.

75.     Detective Arbeeny was subsequently convicted of planting controlled substances and/or illegal drugs on a woman and her boyfriend, and was

convicted of the charges against him including official misconduct, offering a false instrument for filing and falsifying business records.

76.    Recently, the New York Supreme Court, County of Kings, Criminal Term, Gustin L. Reichbach, J., determined that the NYPD has a system of flawed procedures that caused Detective Arbeeny's unlawful actions. Judge Reichbach further determined that the NYPD has a widespread culture of corruption and has adopted a "cowboy culture" and practice which he described as "[a]nything goes. . . ." That Judge Reichbach expressed shock at what he described as "the seeming pervasive scope of misconduct [and even worse] . . . the seeming casualness by which such conduct is employed."

77.    Further, in or about 2008, the New York Supreme Court, County of Kings, Criminal Term, Albert Tomei, J., determined at a Mapp hearing in *People v. Simms*, Indictment No. 11263/07, which was held on or about September 9, 2008, that the police officers involved in the arrest in that matter are "not credible" and that the police officers' "testimony is so obviously fabricated . . . to avoid any Constitutional objections the defendant may have . . . and that [any] property taken . . . is to be suppressed because it was the product of an unlawful arrest and search and seizure."

78.    In addition to the instances of police misconduct described above, several officers of the NYPD -- including but not limited to Detective Christopher Perino, Police Officer Michael Daragjati, Police Officer Henry Tavarez, Police Officer William Masso, Detective Oscar Sandino, Detective Sean Johnstone, Sergeant Michael Arenella, Sergeant Jerry Bowens, Police Officer Michael Pena, Police Officer Nicholas Mina, Detective Kevin Spellman, Sergeant Bobby Hadid and Police Officer Admir Kacamakovic -- have recently been convicted of various similar crimes as those described herein including but not limited to falsifying police reports, perjury, corruption, robbery, gun running, drug dealing, prostitution, theft and assault. Former NYPD Commissioner Bernard Kerik was also recently convicted of corruption and similar crimes as those described herein.

79.     Upon information and belief, many of the named individual defendants have a lengthy substantiated history of police misconduct, fraud and dishonesty. Further, many of the named individual defendants are named defendants in numerous lawsuits in this district and in the Southern District of New York alleging similar claims as those alleged herein -- many of which lawsuits have been settled by defendant City of New York with said defendant making substantial monetary payments to the plaintiffs in the said lawsuits.

80.     In addition to the named individual defendants, several officers of the NYPD assigned to the NYPD-70th Precinct -- as the named individual defendants -- routinely make unlawful arrests charging innocent persons with various crimes and/or offenses.

81.     Most of the arrests and charges made by officers assigned to the NYPD-70th Precinct are usually voided and/or dismissed by prosecutors for lack of evidence.

82.     Defendant City of New York has settled numerous lawsuits brought in this district against several officers assigned to the NYPD-70th Precinct concerning similar arrests and charges as those described herein. *See*, *e.g.*, *Steeve Paul v. City of New York* (12 CV 250); *Javier Jones v. City of New York* (10 CV 3719); *Edward Ogunmoyin v. City of New York* (10 CV 1060) *John McLean v. City of New York* (10 CV 631); *Edward Ogunmoyin v. City of New York* (08 CV 5012).

83.     Defendant City of New York maintained the above described policies, practices, customs or usages knowing fully well that the policies, practices, customs or usages lead to improper conduct by its police officers and employees. In failing to take any corrective actions, defendant City of New York acted with deliberate indifference, and its failure was a direct and proximate cause of plaintiffs' injuries as described herein.

84.     The actions of defendants, acting under color of State law, deprived plaintiffs of their due process rights, and rights, remedies, privileges, and immunities under the laws and Constitution of the United States, treatise, ordinances, customary international law and norms, custom and usage of a right; in

particular, the right to be secure in their person and property, to be free from abuse of process, racial profiling, the excessive use of force and the right to due process.

85.     By these actions, defendants have deprived plaintiffs of rights secured by treatise, ordinances, customary international law and norms, custom and usage of a right, and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

THIRD CAUSE OF ACTION: 42 U.S.C. § 1985

86.     By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 85 of this complaint as though fully set forth herein.

87.     In an effort to find fault to use against the plaintiffs, defendant officers conspired among themselves and conspired with other individuals to deprive plaintiffs who are blacks of their constitutional rights secured by 42 U.S.C. § 1983, and by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to United States Constitution, because of their race, ancestry and/or ethnicity, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

88.     In light of the foregoing therefore, defendant officers engaged in a conspiracy designed to deprive plaintiffs of their constitutional and federal rights in violation of 42 U.S.C. § 1985.

89.     As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiffs sustained the damages hereinbefore stated.

FOURTH CAUSE OF ACTION: NEW YORK STATE CONSTITUTION, ARTICLE I, §§ 5, 6, 8, 11 & 12

90.     By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 89 of this complaint as though fully set forth herein. By reason of the foregoing, and by arresting, detaining and imprisoning plaintiffs without probable cause or reasonable suspicion, and harassing and assaulting them and depriving the plaintiffs of due process and equal protection of laws, defendants deprived plaintiffs of rights,

remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 5 (prohibiting cruel and unusual punishments), Article 1, § 6 (providing for due process), Article 1, § 8 (guaranteeing freedom of speech), Article 1, § 11 (prohibiting discrimination in civil rights and providing for equal protection of laws) & Article I, § 12 (prohibiting unreasonable searches & seizures) of the New York Constitution.

91.     In addition, defendant officers conspired among themselves and conspired with other individuals to deprive the plaintiffs of their constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

92.     Defendant officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as officers, agents, or employees. Defendant officers' acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. Defendant officers acted willfully, knowingly, and with the specific intent to deprive the plaintiffs of their constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution.

93.     Defendants, their officers, agents, servants, and employees were responsible for the deprivation of plaintiffs' state constitutional rights.

FIFTH CAUSE OF ACTION: OTHER NEW YORK TORTS

94.     By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 93 of this complaint as though fully set forth herein.

95.     The conduct of the defendants, as described herein, amounted to false arrest/imprisonment, assault and battery, unlawful stop and frisk, unreasonable search and seizure, unreasonable detention, negligence, defamation, conspiracy, special injury, loss of consortium, harassment, tortuous interference, abuse of power, fraud, trespass, negligent and intentional emotional distress and negligent hiring and retention of defendant officers.

96.     Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

WHEREFORE, plaintiffs respectfully pray judgment as follows:

a.     For compensatory damages against all defendants in an amount to be proven at trial;

b.     For exemplary and punitive damages against all defendants in an amount to be proven at trial;

c.     For costs of suit herein, including plaintiffs' reasonable attorney's fees; and;

d.     For such other and further relief as the court deems proper.

DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury.

Dated: Brooklyn, New York
        May 9, 2014

UGO UZOH, P.C.

/s/

By:     _____
        Ugochukwu Uzoh (UU-9076)
        Attorney for the Plaintiffs
        304 Livingston Street, Suite 2R
        Brooklyn, NY 11217
        Tel. No: (718) 874-6045
        Fax No: (718) 576-2685
        Email: u.ugochukwu@yahoo.com